Muratti, Peticionario, v. Foote, Juez de Distrito, Demandado, y El Pueblo, Interventor.

Solicitud para que se expida un auto de *certiorari* al Juez de la Corte de Distrito de Mayagüez, en causa por delito de asesinato en segundo grado.

No. 185.—Resuelto en julio 13, 1917.

Ciudadanía de los Estados Unidos—Su Extensión a Puerto Rico.—Histórica y legalmente, la total ciudadanía de los Estados Unidos constituye El Pueblo de los Estados Unidos y ser ciudadano es ser parte del poder soberano. La soberanía de los Estados Unidos en su sentido objetivo fué hecha extensiva a Puerto Rico por el Tratado de París y en su sentido subjetivo, o como poder regulador fundamental, lo ha sido por la Ley Jones.

Id.—Tratados—Leyes del Congreso—Diferencia Entre Ambos.—No existe diferencia alguna radical entre el efecto de un tratado de los Estados Unidos y una ley del Congreso, si bien algunas veces un tratádo puede requerir la acción del Congreso; pero de existir alguna diferencia debe ser preferida la Ley del Congreso en la cual ambas cámaras intervienen, de lo que se infiere que cualquier reglamentación interior que pueda efectuarse por virtud de un tratado puede también efectuarse por una ley del Congreso. El efecto de la concesión hecha de la ciudadanía por una ley del Congreso es igual si no superior a la misma concesión hecha por un tratado.

Id.—Grados de Ciudadanía—Ciudadanía Restringida.—No existen en los Estados Unidos grados de ciudadanía, por lo que no puede decirse que la colectiva concedida al pueblo de Puerto Rico por la Ley Jones sea restringida por razón de la disposición que permite hacer renuncia de la misma dentro de los seis meses de aprobada aquélla.

Id.—Concesión a Puerto Rico por la Ley Jones—Territorio Organizado.—Id. Incorporado—Constitución de los Estados Unidos—Acusación por un Gran Jurado.—La concesión de la ciudadanía concedida colectivamente a los habitantes de El Pueblo de Puerto Rico por el artículo 5 de la Ley Jones, dada la historia de los Estados Unidos y la historia de Puerto Rico, ha convertido este Territorio organizado por el régimen de la Ley Foraker en Territorio incorporado, y, por tanto, la Constitución está hoy en toda su fuerza y vigor, y con ella la Enmienda 5ª. que concede una acusación por un gran jurado en casos de delito grave o infamante.

Territorio Incorporado—Elementos Esenciales para la Incorporación de un Territorio.—Los elementos que necesariamente completan la incorporación de un territorio son: la adquisición del territorio, la ciudadanía de sus habitantes, y el gobierno organizado; y aun en algunos casos existiendo los dos primeros, como en el caso de Alaska, no se exige más que alguna acción por parte del Congreso.

Id.—Incorporación del Territorio de Puerto Rico—Ley Jones.—No es necesaria una fórmula determinada para incorporar un territorio; pero si ésta es necesaria, en cuanto a Puerto Rico se da en la Ley Jones al expresar de un modo terminante que "todos los ciudadanos de Puerto Rico se declaran por la presente ciudadanos de los Estados Unidos y serán considerados y

tenidos como tales''; existiendo una asociación completa de los habitantes de Puerto Rico con el pueblo de los Estados Unidos; y siendo además el pueblo del continente de los Estados Unidos y el pueblo de Puerto Rico ciudadanos de un país común.

Los hechos están expresados en la opinión.

Abogados del peticionario: *Sres. Feliú & Alemañy.*

Abogados del Interventor: *Sres. Howard L. Kern, Attorney General; Salvador Mestre, Fiscal del Supremo;* y *George S. Brengle, Oficial Jurídico.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

El peticionario fué acusado por un delito de asesinato en segundo grado. El día en que le fué leída la acusación en la Corte de Distrito de Mayagüez presentó una moción solicitando de la corte que anulara o desestimara la acusación por haber sido formulada sin ser presentada por un gran jurado, infringiéndose así la Quinta Enmienda a la Constitución de los Estados Unidos. La Quinta Enmienda dispone lo siguiente:

"A nadie se obligará a que conteste cargos por delito grave o infamante bajo cualquier concepto, si no es mediante acusación escrita presentada por un gran jurado, excepto en casos que ocurrieren en el Ejército, o la Armada, o en la Milicia, estando en servicio activo en tiempo de guerra, o de peligro público. No se pondrá a nadie dos veces en peligro de perder la vida o algún miembro por un mismo delito; no podrá obligársele a declarar contra sí mismo en una causa criminal; no se le podrá quitar la vida, la libertad o los bienes, sin el debido procedimiento legal, ni se podrá tomar la propiedad particular para objetos de utilidad pública, sin la debida compensación.''

La cuestión que verdaderamente pende ante la corte es si la Constitución de los Estados Unidos está hoy en toda su fuerza y vigor en Puerto Rico, y especialmente dicha Enmienda Quinta.

El abogado del peticionario según entendemos se basó principalmente en la teoría de que Puerto Rico estaba incorporado independientemente de la Ley del Congreso de marzo 2 de 1917, conocida familiarmente por Ley Jones, pero en cuanto al status de Puerto Rico anterior a esa ley tenemos

que atenernos a la resolución de la Corte Suprema de los Estados Unidos en los casos de *Downes* v. *Bidwell,* 182 U. S. 244; *Dorr* v. *United States,* 195 U. S. 138; *Rasmussen* v. *United States,* 197 U. S. 516. En estas decisiones se sostiene en efecto que toda la Constitución no es aplicable a un territorio que ha sido adquirido hasta tanto el Congreso lo incorpore, y un pronunciamiento específico de que Puerto Rico no era un territorio incorporado bajo el régimen de la Ley Fóraker es el que aparece en el caso de *Kopel* v. *Bingham,* 211 U. S. 468, 476, a saber:

"Puede justamente afirmarse que Puerto Rico es un Territorio completamente organizado, aunque no es un Territorio incorporado a los Estados Unidos, y que no hay razón por la que no deba considerarse a Puerto Rico como uno de los territorios comprendidos en la sección 5278;"

y este criterio fué confirmado en los casos de *American Railroad Company* v. *Didricksen,* 227 U. S. 145; *People of Porto Rico* v. *Rosaly,* 227 U. S. 270, 274. Con anterioridad al día 2 de marzo de 1917, este tribunal entendía de igual modo la ley. *Ex parte Bird,* 5 D. P. R. (1ª Ed.) 504; *Ex parte Díaz,* 7 D. P. R. 153; *El Pueblo* v. *Kent,* 10 D. P. R. 343; *El Pueblo* v. *Acosta,* 11 D. P. R. 249; *Cintrón* v. *Banco Territorial y Agrícola,* 15 D. P. R. 507. La situación, sin embargo, ha variado en virtud de la Ley Jones.

El artículo 5 de la Ley Jones prescribe:

"Todos los ciudadanos de Puerto Rico, según se definen en la sección 7 de la ley de 12 de abril de 1900, 'Para proveer, temporalmente de rentas y de un gobierno civil a Puerto Rico, y para otros fines,' y todos los nativos de Puerto Rico que estaban temporalmente ausentes de la isla en 11 de abril de 1899, y hayan regresado después y estén residiendo permanentemente en dicha isla, y no sean ciudadanos de ningún país extranjero, se declaran por la presente ciudadanos de los Estados Unidos, y serán considerados y tenidos como tales; *Disponiéndose,* que cualquier persona de las descritas anteriormente podrá conservar su presente status político, haciendo una declaración, bajo juramento, de su resolución a ese efecto, dentro de seis meses de haber entrado en vigor esta Ley, ante el tribunal de dis-

trito del distrito en que resida, declaración que se hará en la forma siguiente: * * *."

Y la alegación que se hace es que la ciudadanía de tal modo concedida a los habitantes de Puerto Rico, dada la historia de los Estados Unidos y la historia de la Isla, ha convertido este Territorio organizado en Territorio incorporado.

El Gobierno de Puerto Rico por medio de su Fiscal General ha sostenido que la cuestión relativa, a la incorporación de Puerto Rico depende únicamente de la voluntad del Congreso y que la Ley Jones no solamente no demuestra intención alguna de hacer la incorporación, sino que manifiesta un propósito contrario y que los actos contemporáneos subsiguientes del Congreso se encaminan en el mismo sentido. Alega además que en este caso el auto debe ser anulado porque la Legislatura de Puerto Rico, creada por la ley de marzo 2, no ha tenido la oportunidad de establecer el gran jurado.

De conformidad con la teoría de que el Congreso no ha expresado su intención de hacer la incorporación, el Fiscal General ha presentado un análisis muy razonado de la Ley Jones, de las leyes existentes del Congreso y del estado de derecho que se supone fué establecido por las resoluciones de los casos Insulares y del caso de Rasmussen. En verdad que si no fuera por la concesión de la ciudadanía hecha en la Ley Jones, tendría que prevalecer la alegación del Fiscal General, de acuerdo con las autoridades. Pero fué concedida la ciudadanía colectiva a los habitantes de Puerto Rico por la Ley Jones.

En el caso de *McCulloch* v. *Maryland,* 4 Wheaton 402, se declaró que El Pueblo de los Estados Unidos era soberano, que la Constitución y todos los poderes emanaban del mismo y que la Constitución fué creada como dice este pueblo en el preámbulo, para establecer una unión más perfecta. En el caso de *Osborn* v. *Bank of the United States,* 9 Wheat. 737, volvió otra vez la corte a declarar por conducto del Juez Presidente Sr. Marshall, que un ciudadano naturalizado se convierte en miembro de la sociedad y posee todos los dere-

chos de un ciudadano nativo, y 'está desde el punto de vista de la Constitución, en el mismo nivel que un nativo, principio que fué reiterado en el caso de *United States* v. *Wong Kim Ark,* 169 U. S. 703. Las palabras "pueblo de los Estados Unidos" y "ciudadanos" son términos sinónimos y significan la misma cosa, *Scott* v. *Sanford,* 19 Howard, 404; *United States* v. *Cruikshank et al.,* 92 U. S. 549; *Boyd* v. *Thayer,* 143 U. S. 159. En el caso de *Hennessey* v. *Richardson Drug Co.,* 189 U. S. 25, la corte citó con aprobación un caso de Carolina del Norte, el de *State* v. *Manuel,* 4 Dev. & Bat. 20, 24, 26 en el que se dijo: "La palabra 'ciudadano' según se entiende en nuestra ley, es precisamente análoga a la palabra 'súbdito' en la ley común, y el cambio de fraseología procede enteramente del cambio de gobierno. La soberanía ha sido traspasada de un hombre al cuerpo colectivo del pueblo, y aquel que antes era un súbdito del Rey es ahora un ciudadano del Estado."

Histórica y legalmente, como lo demuestran los casos citados, la idea es que la total ciudadanía de los Estados Unidos constituye el pueblo de los Estados Unidos, y que ser ciudadano es ser parte del poder soberano. La soberanía de los Estados Unidos en su sentido objetivo fué hecha extensiva a Puerto Rico por el Tratado de París. Sostenemos que en su sentido subjetivo, o como poder regulador fundamental, la soberanía de los Estados Unidos se ha hecho extensiva a Puerto Rico mediante la Ley Jones.

Se alega que los casos de *Downes* v. *Bidwell,* 182 U. S. 244, y el de *United States* v. *Rasmussen,* 197 U. S. 516, constituyen autoridades para sostener el criterio de que Puerto Rico no es un territorio incorporado, no obstante el hecho en contrario de que en la Ley Jones se hace la concesión de la ciudadanía colectiva. Hemos examinado estas decisiones con cuidado escrupuloso y no encontramos en ellas nada que sostenga la teoría del Gobierno. Por el contrario creemos que la tendencia inevitable y fuerza de estas decisiones está necesariamente en favor de que Puerto Rico es ahora parte

integrante de los Estados Unidos, como Louisiana, Florida y otros Territorios antes de su admisión como Estados y como Hawaii, el Distrito de Columbia y Alaska hoy día. Antes de hacer una consideración de estos casos en que está envuelta la cuestión de la ciudadanía, hay otra cosa que ha de quedar establecida.

¿Existe alguna diferencia radical entre el efecto de un tratado de los Estados Unidos y una Ley del Congreso? La Corte Suprema de los Estados Unidos en el caso de *De Lima* v. *Bidwell*, 182 U. S. 1, ha contestado a esta pregunta en sentido negativo. En la opinión de la corte en la página 195 se citan los casos que sostienen que la corte ha de tener en cuenta tanto un tratado como una ley del Congreso; que es equivalente a una ley de la Legislatura. En la opinión disidente que aparece en la página 215 se admite esto específicamente, y, desde luego, como se demuestra en la opinión, página 195, la igualdad o equivalencia se deduce de la Constitución. La cuestión de si un tratado puede requerir a veces acción ulterior del Congreso está fuera de nuestro presente argumento. Como si hay alguna diferencia ha de ser preferida la ley del Congreso en la cual ambas Cámaras intervienen, de ahí se infiere necesariamente que cualquier reglamentación interior que pueda efectuarse por virtud de un tratado, seguramente que también puede efectuarse por una ley del Congreso.

Pasemos a considerar el caso de *Downes* v. *Bidwell*. En dicho caso los jueces disidentes, 182 U. S. 347 *et seq.* (exceptuando tal vez al Juez Sr. Harlan que aun fué más radical), expresan el criterio de que con la ciudadanía o sin ella la adquisición de un territorio y el establecimiento de un gobierno organizado lleva consigo la Constitución. En el caso de Rassmussen, 197 U. S. 516, dichos jueces disidentes, exceptuando tal vez al Juez Sr. Harlan, estuvieron conformes con la opinión de la mayoría al declarar que la adquisición de un territorio, más la ciudadanía, más alguna acción del Congreso que pudiera ser quizás menos que un gobierno or-

ganizado, era lo mismo que incorporación. La duda que hubo en el caso de Rassmussen fué si era necesaria alguna acción por parte del Congreso cuando de un modo claro confería la ciudadanía en el tratado.

Al considerar la opinión del Juez Sr. White en el caso de *Downes v. Bidwell,* 182 U. S. 287 *et seq.,* creemos que es justo incluir también al Juez Sr. Gray con los jueces Señores Shiras y McKenna, porque el Juez Señor Gray manifestó que estaba conforme substancialmente con la opinión del Juez Sr. White. Se llegó a un acuerdo de la última opinión por la mayoría de los jueces concurrentes y puede decirse que pasó a ser la opinión de la Corte Suprema debido a su acción en el caso de Rassmussen y como creemos, por el caso de *Dorrs v. United States,* 195 U. S. 138. ¿Qué es lo que impide en dicha opinión concurrente que sea considerado Puerto Rico como un Territorio doméstico para todos los fines? Nada que no sea la falta de ciudadanía de sus habitantes. En las páginas 304, 305 y 306, la idea que se expresa es que la ciudadanía de los Estados Unidos debe estar protegida contra los habitantes que no están preparados en un territorio adquirido nuevamente. La adquisición de un territorio no debe incorporar a un pueblo extraño y hostil, pág. 307. El Juez Sr. White niega la proposición de que millones de habitantes de un territorio extranjero pueden ser incorporados irrevocablemente a los Estados Unidos sin el deseo o consentimiento del Pueblo de los Estados Unidos, páginas 312, 313. Sostiene que el territorio del Noroeste prácticamente no contenía más que ciudadanos en tanto se trataba de su población blanca, páginas 319, 321. El caso de Louisiana para él representaba un caso claro de incorporación de los habitantes del Territorio como ciudadanos de los Estados Unidos, páginas 322, 333. "Ciudadanía común," eran las palabras del actual Juez Presidente. "Y los mismos derechos fueron conferidos de la misma manera por la cual otros territorios habían sido incorporados anteriormente, esto es, otorgando los privilegios de la ciudadanía y los derechos e inmunidades que correspondían al te-

rritorio del Noroeste;'' página 333. En cuanto a la Florida
no hubo diferencia esencial alguna y cualquier duda contem-
poránea que hubiere habido ella quedó disipada mediante la
acción del Gobierno en los tratados subsiguientes, páginas
334, 335, (si es que no lo fué en el caso de la *American Insu-
rance Company* v. *Canter,* 1 Peter 511). Alaska contenía
disposiciones para la incorporación por cuanto la ciudadanía
fué conferida por el tratado, página 335.

''De aquí se deduce, por tanto, que cuando un tratado no
contiene condiciones de incorporación, y sobre todo, cuando
no sólo no tiene tales condiciones sino que expresamente pres-
cribe lo contrario, la cuestión de incorporación no surge hasta
que el Congreso en su sabiduría considere que el territorio
adquirido ha llegado a un estado en que procede que deba
entrar a formar parte de la familia americana,'' página 339.
Es a los habitantes a que se refiere el Juez Sr. White. Ellos
alcanzan el deseado ''estado,'' no el territorio.

''Me parece que no es necesario examinar más el pre-
cepto de la Ley (Ley Foraker) en vista del hecho de que
según fué informada dicha ley por el comité, ella contenía
un precepto concediendo la ciudadanía a los habitantes de
Puerto Rico que fué eliminado en el Senado,'' dice el Juez
Sr. White, pág. 341, después de haber hablado de la incor-
poración.

Pero si quedara alguna duda acerca de la opinión del Juez
Sr. White, ésta desaparece al leerse el caso de *United States*
v. *Rassmussen.* En ese caso se sostiene que la adquisición
de un territorio y la ciudadanía es prácticamente incorpora-
ción, por lo menos con algún reconocimiento del Territorio
por el Congreso.

El Juez Sr. Brown que emitió nominalmente la opinión de
la corte en el caso de *Downes* v. *Bidwell,* dijo lo siguiente en
la página 279: ''Somos también de opinión de que el poder
de adquirir un territorio no sólo implica la facultad de gober-
nar dicho territorio, sino la de prescribir las condiciones en
que los Estados Unidos reciben a sus habitantes y cuál ha-

brá de ser su *status* en lo que el Juez Presidente Sr. Marshall denomina 'el Imperio Americano.' No existe al parecer término medio entre esta posición y la doctrina de que si sus habitantes no quedan convertidos inmediatamente por virtud de la anexión en ciudadanos de los Estados Unidos, sus hijos nacidos después, ya sean salvajes o civilizados, son tales ciudadanos, con derecho a todos los privilegios, derechos e inmunidades de los ciudadanos.'' El Juez Sr. Brown sostenía que no podía ir la ciudadanía a los habitantes ni a sus hijos por la adquisición de un territorio. La diferencia que establecía era la falta de ciudadanía, parecer que ha sido confirmado en su opinión concurrente en el caso de Rassmussen. En esa opinión sostuvo que era necesaria una acción más formal por parte del Congreso pero él encontró esa acción formal en la Ley para Alaska que entonces se consideraba, y que la corte declaraba anticonstitucional en tanto se trataba en ella de proveer un jurado inadecuado para ese territorio. Para el Juez Sr. Brown los elementos esenciales para la incorporación eran la adquisición del territorio, la ciudadanía de sus habitantes y el gobierno organizado. Encontró que todos estos elementos existían en cuanto a Alaska. Cada uno de los demás jueces que intervinieron en el caso de *Downes* v. *Bidwell* hubieran estado satisfechos con algo menos. Todos dichos tres elementos existen en Puerto Rico si es que entendemos la concesión hecha de la ciudadanía. El caso de *Downes* v. *Bidwell* no milita contra la teoría de la incorporación. La sostiene, y el caso de Rassmussen creemos que deja resuelta la cuestión. La ciudadanía fué conferida por el Congreso y el efecto de una concesión hecha por una ley es igual, si no superior, a la misma concesión hecha por un tratado.

De sugerirse que es necesaria una fórmula determinada, esto se niega por todos los jueces que tomaron parte en el caso de Rassmussen, incluyendo al Juez Sr. Brown. Dice la corte en las páginas 526, 527 de la opinión:

''El argumento por virtud del cual se pretende eludir la fuerza decisiva de los casos que acaban de citarse, es que cuando fueron re-

sueltos había legislación del Congreso por la que se extendía la Cons-
titución al Distrito de Columbia o al territorio en particular a que
haya podido referirse un caso; por tanto, debe considerarse que las
decisiones han procedido fundadas solamente en el estatuto y no en
la aplicación inherente de los preceptos de la Quinta, Sexta y Séptima
Enmiendas, al Distrito de Columbia o a un territorio no incorporado.
Y en la idea de que los casos se distinguen del presente por el motivo
que acaba de expresarse, continúa el argumento insistiendo en que
la Sexta Enmienda no es de aplicación al caso de Alaska, porque el
artículo 1891 de los Estatutos Revisados sólo hace extensiva la Cons-
titución a los Territorios organizados en los cuales no está compren-
dida Alaska.

"Aunque está bien fundada la presente respecto a la existencia
de la legislación que declara que la Constitución es extensiva a los
territorios a que respectivamente se referían los casos, la conclusión
que se infiere de ese hecho no está justificada. Sin tratar de exa-
minar en detalle la opinión en los varios casos, a nuestro juicio re-
sulta claramente de los mismos que se fundaban sustancialmente en
la proposición de que cuando el territorio es parte de los Estados
Unidos sus habitantes tenían derecho a las garantías de la Quinta,
Sexta y Séptima Enmiendas, y que la ley o leyes del Congreso que
trataban de extender la Constitución fueron consideradas como me-
ramente declaratorias de un resultado que existía independientemente
por la aplicación inherente de la Constitución. Es verdad que en
algunas de las opiniones se hizo referencia a la aplicación de la Cons-
titución y a los preceptos estutorios que declaran tal aplicación,
pero en otras no se hizo alusión alguna a dichos estatutos y los ca-
sos se fundaron en una línea de razonamiento que no deja lugar
a sostener otro criterio que no sea la conclusión de que la corte se
basó en la aplicación eficaz por sí misma de la Constitución, *Sprin-
ville* v. *Thomas,* 166 U. S. 707; *Thomson* v. *Utah,* 170 U. S. 343; *Capi-
tal Traction Co.* v. *Hof,* 174 U. S. 1; *Black* v. *Jackson,* 177 U. S.
349;" y la corte analiza los casos citados.

Pero si es necesaria una fórmula particular, ésta se nos
da en la Ley Jones. La corte en el caso de *United States* v.
*Rassmussen,* 197 U. S. 522, dice lo siguiente:

"El tratado referente a Alaska en vez de mostrar, como se hizo
en el tratado relativo a las Islas Filipinas, la determinación de re-
servar la cuestión del status del territorio adquirido para la ulterior

acción del Congreso, manifestaba una intención contraria puesto que en él se declara expresamente en el artículo 3, lo siguiente:

" 'Los habitantes del territorio cedido serán admitidos a gozar de todos los derechos, ventajas e inmunidades de los ciudadanos de los Estados Unidos, y se les mantendrá y protegerá en el libre goce de su libertad, propiedad y religión.'

"Esta declaración aunque algo cambiada en su fraseología, es equivalente, como se ha indicado en el caso de *Downes* v. *Bidwell*, a la fórmula empleada desde el principio para expresar el propósito de incorporar un territorio adquirido a los Estados Unidos, especialmente a falta de otras prescripciones que demuestren una intención contraria. Y fué sin duda este hecho unido a la subsiguiente legislación del Congreso lo que indujo a expresar lo siguiente con respecto a Alaska en la opinión de tres, si no de cuatro de los jueces que estuvieron conformes con la sentencia confirmatoria en el caso de *Downes* v. *Bidwell* (pág. 335).

" 'Sin hacer referencia en particular a la adquisición que de Alaska hicimos a Rusia es bastante con decir que también ese tratado contenía disposiciones para la incorporación y se procedió con él de acuerdo exactamente con la interpretación práctica aplicada en el caso de la adquisición de Méjico como acaba de expresarse.' "

Las palabras de la Ley Jones son aún más terminantes: "Todos los ciudadanos de Puerto Rico   *   *   *   se declaran por la presente ciudadanos de los Estados Unidos, y serán considerados y tenidos como tales." La ley no dice, como se dijo en el tratado de Alaska, que los habitantes tendrán los privilegios de los ciudadanos. Los declara ciudadanos inmediatamente. La asociación de los habitantes de Puerto Rico con El Pueblo de los Estados Unidos se hace por completo. El pueblo del Continente de los Estados Unidos y el pueblo de Puerto Rico son ciudadanos de un país común para los dos.

Se ha alegado por el Gobierno que la Ley Jones no contiene una concesión absoluta de la ciudadanía por razón de la disposición que en ella permite hacer renuncia de la misma dentro de seis meses. Si bien es cierto que, entre otras, se han establecido en los libros distinciones entre adultos y menores, hombres y mujeres, cuerdos y locos, sin embargo, no

existen en los Estados Unidos grados de ciudadanía. La ley
otorga una ciudadanía colectiva y es materia de historia con-
temporánea de que antes de que fuese definitivamente resuelta
por el Congreso estuvo pendiente la cuestión de si habría de
ser la ciudadanía colectiva ó la electiva la que habría de
concederse. En los primeros pasos de la situación hubo una
tendencia hacia la concesión en forma opcional. Este pro-
blema pudo no haberse solucionado cuando la Ley Jones tomó
forma al principio. Si hubiera prevalecido la tendencia ini-
cial y la ciudadanía hubiese sido ahora solamente conferida
a aquellos que pasaran por una especie de matrícula, el ar-
gumento hubiese tenido alguna fuerza. Sin embargo, la ciu-
dadanía finalmente concedida efecta al cuerpo total del pueblo
de Puerto Rico igualmente y no puede distinguirse de la ciu-
dadanía de los Estados Unidos. Aun cuando la declaración
de independencia no forma parte de nuestro derecho escrito
sus tradiciones han sido lo bastante para impedir cualquier
distinción en nuestros ciudadanos. Siendo ello cierto noso-
tros no podemos, especialmente en ausencia de alguna dis-
posición semejante a la de la cláusula prohibicionista de la
ley, imputarle al Congreso una intención de conceder una ciu-
dadanía restringida. Sólo les permite a los que no la renun-
cien el retener su status de acuerdo con el Bill Foraker. La
disposición debe ser tomada mejor como una condición sub-
siguiente o revocación, y la ciudadanía colectiva en todo caso
será aplicable hasta que tal condición o revocación tenga lu-
gar. *Oregon & California Railroad Company* v. *United
States*, 238 U. S. 231, 239. Pero sería absurdo suponer que
el Congreso tenía *in menti* una ciudadanía sujeta a tal revo-
cación.

La ley contempla una ciudadanía no restringida. Los
funcionarios deben ser ciudadanos, artículo 10. Los electo-
res deben ser ciudadanos, artículo 35. El Comisionado Re-
sidente en Washington debe ser ciudadano, artículo 36.

Existen ciertos datos o indicios que se supone que anulan
la concesión de la ciudadanía y que impiden la incorporación.

El primero entre éstos es el de que la Ley Jones en la "De-
claración de Derechos," artículo 2, menciona prácticamente
cada uno de los privilegios e inmunidades garantizados por
las diez primeras enmiendas a la Constitución de los Estados
Unidos pero omite la presentación de la acusación por el
gran jurado y el juicio por jurado. Surgiendo como surge
la incorporación de la ciudadanía, no existe fuerte incon-
gruencia en que se mencionen y acentúen ciertos derechos,
precisamente los más fundamentales, y se prescinda de men-
cionar otros que también son consecuencia de la incorpora-
ción. De todos modos la concesión de la ciudadanía es ine-
quívoca y toda la ley debe ser interpretada en sentido favo-
rable al concesionario. Esta es la regla de la Ley Común de
Inglaterra para escrituras y concesiones. En los casos de
franquicias y cosas semejantes, el público está interesado y
se consideran en contra del concesionario. Pero El Pueblo
de los Estados Unidos no tiene ningún interés en excluir de
la incorporación la ciudadanía común de los Estados Unidos.
La concesión de la ciudadanía destruye cualquier otra expre-
sión dudosa en cuanto a la intención. El Congreso no puede
conceder la ciudadanía a los habitantes de un Territorio or-
ganizado y al mismo tiempo privarles de los privilegios de
la ciudadanía.

La sección 1891 de los Estatutos Revisados ha sido men-
cionada. Es aplicable a los Territorios incorporados auto-
máticamente y el hecho de que el Congreso solo hizo mención
en la Ley Jones de las leyes estatutorias de los Estados Uni-
dos no requiere que sea de aplicación la máxima *expressio
unius est exclussio alterius.* La sección 1891, para los fines del
argumento, puede ser desatendida y carece de fuerza.

El suministrar un distinto sistema de rentas cuando dichas
rentas pasan a la tesorería del país no es cosa rara tratán-
dose de un Territorio incorporado. *Binns* v. *United States,*
194 U. S. 486.

El disponer cualquier sistema diferente de derechos po-
líticos está asimismo dentro de los poderes del Congreso.

*Murphy* v. *Ramsey,* 114 U. S. 15 y casos citados; Mormon Church Case, 136 U. S. 1.   Casos insulares, *passim.*

La exclusión de la Ley de Comercio entre Estados y la de Instrumentos de Seguridad probablemente estaba dentro de las facultades del Congreso.   Las condiciones locales son diferentes en este Territorio.   *Ponce Lighter Co.* v. *Municipio de Ponce et al.,* 19 D. P. R. 760; y *El Pueblo de Puerto Rico* v. *Central Fortuna,* 22 D. P. R. 106.   De haber alguna duda los preceptos particulares tendrían que considerarse anticonstitucionales.   Que los preceptos particulares pueden ser declarados en tal sentido es ley corriente y de esa clase fué la sentencia en el caso de Rassmussen.

La historia de la incorporación de los Territorios de los Estados Unidos ha sido marcada en las Decisiones Insulares y en el caso de Rassmussen.   También ha sido objeto de una razonada y extensa opinión emitida por el Juez Hamilton en el caso de Carlos Tapia resuelto recientemente.   Considerados los antecedentes y especialmente el caso de Rassmussen resulta, pues, que aunque algunos de los Jueces de la Corte Suprema han declarado que algo menos es suficiente, todos están contestes en que la adquisición de un territorio, más la ciudadanía, más el gobierno organizado, es incorporación.   En Puerto Rico la única diferencia es que la ciudadanía fué la última concesión.   Sostener que la incorporación no ha llegado todavía aquí es decir que la adquisición de un Territorio, más el gobierno organizado, más la ciudadanía en el caso de Puerto Rico no es igual a la adquisición de un Territorio más la ciudadanía, más el gobierno organizado, el caso de Alaska, o lo que es lo mismo, negar la verdad algebráica de que $a + b + c = a + c + b$.

Una de las consideraciones que quizás es la más importante la hemos dejado para lo último.   La teoría de aquellos que sostendrían que Puerto Rico no ha sido incorporado depende para su validez del estado de cosas creado por el Tratado de París.   Creemos también que no se ha llegado a comprender el alcance de las Decisiones Insulares.   En ellas

se estableció solamente que bajo el Tratado de París nin-
guno de los territorios insulares podía ser incorporado hasta
que el Congreso actuara sobre el particular. No se dijo, y
lo niegan los hechos y los precedentes históricos, que la apli-
cación de toda la Constitución a un determinado Territorio de-
pendía únicamente o siempre del Congreso o mucho menos
de una expresión no dudosa por parte del Congreso. Lord
Mansfield dijo hace mucho tiempo que cuando un estatuto
había quedado oscurecido en su significación debido a la in-
terpretación, era conveniente retroceder al estatuto. Las pa-
labras positivas y particulares que diferenciaban al tratado
de los anteriores tratados eran las siguientes, "Los derechos
civiles y la condición política de los habitantes naturales de
los territorios aquí cedidos a los Estados Unidos se deter-
minarán por el Congreso." En estas palabras no hay alu-
sión alguna al Territorio como tal. Los habitantes del Te-
rritorio estaban en la mente de las altas partes contratantes.
Si predominaba el tratado lo único que se dejaba al Congreso
era el determinar los derechos civiles y condición política de
los habitantes naturales. Por tanto, dijo la Corte Suprema,
hasta que actúe el Congreso no hay incorporación. Pero el
Congreso controla siempre el *status* político de un Territorio,
bien sea incorporado, ya organizado o dependiente meramente.
Pero el Congreso en la fecha del caso de *Downs v. Bidwell*
acababa de declarar que Puerto Rico era un Territorio or-
ganizado. El Congreso puede determinar los derechos po-
líticos de un Territorio aun cuando esté habilitado exclusi-
vamente por ciudadanos. Pero la Corte Suprema dijo nue-
vamente en los Casos Insulares que el Congreso no había ac-
tuado sobre los derechos civiles de los habitantes. No los
había hecho ciudadanos. Pero así lo hizo el Congreso en
marzo 2 de 1917, y debe presumirse concluyentemente que el
Congreso tuvo presente todas las consecuencias de sus actos.
La Ley Jones es por sí completa en su forma. Si hubieran
sido sustituídos los artículos 2, 3, 4 y 5 de la Ley Jones por
el artículo 7 de la Ley Foraker, no podemos imaginarnos que

la Corte Suprema, en vista de la concesión de la ciudadanía, no hubiera dicho a la fecha de los Casos Insulares que el Congreso había agotado el poder restante como le había sido conferido o dejado a él por virtud del tratado. Los derechos de los habitantes están completamente definidos por la concesión de la ciudadanía. Son los mismos que aquellos de los ciudadanos de los Estados Unidos pues los habitantes son tales ciudadanos.

La Enmienda Quinta es necesariamente aplicable a un territorio incorporado. *United States* v. *Rassmussen,* 197 U. S. 616, *supra,* y casos citados. *Callan* v. *Wilson,* 127 U. S. 540; *Thompson* v. *Utah,* 170 U. S. 343; *Capital Traction Co.* v. *Hof,* 174 U. S. 1.

Se nos pide que anulemos este auto porque la legislatura no ha tenido oportunidad de establecer el gran jurado. Nos inclinamos a convenir con el Fiscal General en que la legislatura que va a reunirse en agosto es la verdadera legislatura del territorio incorporado. Se nos llama la atención hacia el caso de *Hawaii* v. *Mankichi,* 190 U. S. 197, como autoridad para la validez de los procedimientos en el caso pendiente ante este tribunal. Una de las diferencias notables es que Hawaii había sido una soberanía completa e independiente y la corte interpretaba la intención de dos soberanías en cuanto a la fecha en que debía ser aplicable la Constitución de los Estados Unidos a Hawaii. En aquel caso el prisionero había sido condenado como lo habían sido otros. Bajo la Ley Jones el privilegio de la Constitución fué consigo inmediatamente y el peticionario como ciudadano tiene derecho al mismo. Pero aun suponiendo que el caso de *Hawaii* v. *Mankichi* pudiera servir de autoridad para sostener una convicción obtenida antes de que la legislatura tuviera oportunidad de actuar, no vemos razón, en el presente caso, en que no ha habido juicio para no conceder al peticionario el privilegio que invoca.

Por estas razones la acusación y todos los procedimientos subsiguientes en el caso, deben ser anulados.

*Con lugar la solicitud y anulada la acusación y todos los procedimientos subsiguientes.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.