THE UNITED STATES, APPELLANT, *v.* OSCAR J. AVERILL, MONROE SALISBURY, AARON KEYSER, AND GEORGE F. PRESCOTT, RESPONDENTS.

REVERSED U. S. *v.* AVERILL, 130 U. S. 335.

CLERKS OF DISTRICT COURTS—LIMIT OF COMPENSATION.—Neither section 1883 of the Revised Statutes of the United States nor section 7 of "an act in relation to courts and judicial officers in the Territory of Utah," approved June 23, 1874, fixes a limit on the aggregate of the fees to be retained by clerks of the district courts of Utah Territory, or provides for payment into the treasury of the United States of any portion thereof.

STATUTORY CONSTRUCTION.—In case of doubt as to the construction of a statute regarding the compensation of an officer of the government, the construction most favorable to the officer should be adopted.

APPEAL from a judgment of the district court of the third district, sustaining a demurrer to the complaint. The facts are stated in the opinion.

*Mr. C. S. Varian,* for appellant.

Cited: Potter's Dwarris, p. 218; Decisions of Comptroller, 3 Lawrence, 154; *U. S.* v. *Hartwell,* 6 Wall., 393; *U. S.* v. *Waitz,* 3 Sawy., 475; *Ex parte Hennen,* 13 Pet., 259.

*Messrs. Sheeks & Rawlins,* for respondents.

BOREMAN, J.:

This is an action brought by the United States against Oscar J. Averill and his sureties on his official bond as clerk of the third district court of this territory, to recover certain balances of the fees and emoluments of his office in excess of the yearly limit of three thousand five hundred dollars, claimed to be fixed by United States statutes. To the complaint a demurrer was filed to each count alleging that the same did not state facts sufficient to constitute a cause of action. The demurrer was sustained. The objection under this demurrer, that the statements relative to the execution and delivery of the bond were not made in the various counts subsequent to the first, was raised and abandoned by defendants Keyser and Prescott, who alone were served with process and appeared. The demurrer being sustained on other grounds, and appellant electing to stand upon the complaint and declining to amend the same, final judgment was entered in favor of respondents, and thereupon appellant brought the case to this court.

The sole question in dispute is as to whether the clerk was required to account and pay over to the United States the fees and emoluments of his office in excess of three thousand five hundred dollars.

The district courts of this territory are territorial and not United States courts, but have United States circuit and district court jurisdiction, and chancery and common law jurisdiction. They are dual in their nature, exercising on the one hand, the powers of a United States court in the states, and on the other hand, the powers common to a state court. They appoint their own clerks, there being but one clerk in each district, and such clerk attending to both United States and territorial matters. The United States marshal for the territory, and the United States district attorney for the territory, are appointees of the President by and with the advice and consent of the Senate. Whether there be any statute of the United States limiting the compensation of a United States marshal for the territory to a maximum of six thousand dollars, or to any other sum, or

whether there be any such statute limiting the compensation of the United States district attorney for the territory to a maximum of nine thousand five hundred dollars, or six thousand dollars, or three thousand five hundred dollars, are not questions now before us for consideration, and the fact that the treasury department may construe the law limiting the compensation allowed to such officers in the states, as applicable to these officers in a territory, although persuasive and entitled to a respectful consideration is not conclusive upon this court.

From the foundation of the government up to the year 1853, there was no statute or law placing a limit upon the amount of the fees and emoluments of officers that might be retained by, or allowed to the United States marshals, United States district attorneys and United States circuit and district court clerks, inside of the states. But, in that year, 1853, Congress prescribed a limit to the amounts that these officers in the states, might retain or be allowed, of the fees and emoluments of their respective offices. No imit was placed upon the compensation to be allowed the clerk of the United States supreme court for many years thereafter, namely, in 1883: 22 Statutes at Large, 631. The act of Congress of 1853 limited the compensation of United States marshals and United States district attorneys in the states, to six thousand dollars each per annum, and of the clerks of the United States circuit and district courts in the states, to three thousand five hundred dollars each per annum; but this act was not made applicable nor interpreted to apply to any United States marshal or United States district attorney in any territory, nor to the clerk of any supreme or district court in any territory; nor did the treasury department hold that it was applicable to any such officer in any territory.

The law stood thus until the twenty-third day of June, 1874, when Congress enacted that "the fees and costs to be allowed to the United States attorneys and marshals, to the clerks of the supreme and district courts, and to jurors, witnesses, commissioners and printers, in the territories of the United States, shall be the same for similar services by such persons as prescribed by chapter 16, title

'The Judiciary,' and no other compensation shall be taxed or allowed:" U. S. Rev. St., 1878 (2d ed.), sec. 1883.

This section does not purport to extend the whole of "chapter 16" over the territories. It points the officers to the chapter where the various items of service they can charge for, and the amounts they can charge, can be found, but does not refer to such chapter to find the limitation upon the amount they may retain or be allowed after the charges, fees and costs have been collected. It says that "the fees and costs to be allowed such officers," etc., "shall be the same for similar services by such persons as prescribed by chapter 16," etc.; and then it prohibits them from claiming any other compensation, saying that "no other compensation shall be taxed or allowed." From this language it might be a question whether the statute was intended to control even the fees of such persons and officers in other than United States cases. It evidently did not look to the fixing of a limit to their incomes. The United States Revised Statutes embracing this provision, were approved on the twenty-second day of June, 1874, and on the following day Congress passed and the President approved another act, entitled, "an act in relation to courts and judicial officers in the territory of Utah," commonly known as the "Poland bill." By the seventh section of this latter act it is provided: "Sec. 7. That the act of the territorial legislature of the territory of Utah, entitled 'an act in relation to marshals and attorneys,' approved March 3, 1852, and all laws of said territory inconsistent with the provisions of this act, are hereby disapproved. The act of the Congress of the United States, entitled 'an act to regulate the fees and costs to be allowed clerks, marshals, and attorneys of the circuit and district courts of the United States, and for other purposes,' approved February 26, 1853, is extended over and shall apply to the fees of like officers in said territory of Utah. But the district attorney shall not by fees and salary together receive more than three thousand five hundred dollars per year; and all fees and moneys received by him above said amount shall be paid into the treasury of the United States."

These two statutes having become laws within a day of each other, and being upon the same general subject, should be construed together. The latter says that "the act of Congress, entitled," etc., "is extended over and shall apply to the fees of like officers in said territory of Utah." This portion of the latter section does, in specific terms, what the former enactment did in general terms, and the repetition of this act in regard to Utah, of the general provision, seems mainly to have been necessary in order to give full effect to the antecedent provisions, in the same section, disapproving an act of the territorial legislature and disapproving "all laws of said territory inconsistent with the provisions of this act." And the subsequent limitation on the income of the district attorney, it being the evident aim and purpose of Congress, by this enactment, to blot out all provisions of territorial statutes inconsistent with the United States fee bill, and to give a new fee bill, and to place a further restriction upon the amount in fees and salary to be allowed the district attorney by the government. To say the least, there is nothing in the fact, that in a part of a section in a special law there is in substance repeated what is enacted in a general law on the same or preceding day, that would lead us to believe that more was intended in the special than in the general law, when we can see good reason for the repetition, and no express language is used to convey the idea that more was intended. It will be noticed that the act thus, by said seventh section, extended over the territory, was an act "to regulate the fees and costs," and it was also an act "for other purposes," but so far as express language goes, it extends the act over the territory only to regulate the fees. There is nothing said about the "other purposes." To interpret or construe it as including the "other purposes," would seem to be putting an improper strain upon the language used. Where statutes are restrictive of the rights of public officers to all the fees and emoluments of their offices, generally allowed by law, limiting and cutting down their compensation to a fixed maximum, they are to be interpreted so as to give effect to the restriction only so far as the legislature has positively spoken:

*U. S.* v. *Bassett,* 2 Story, 389. This statute certainly has not, in express words, said that the limitation provisions of the act of Congress of 1853 are extended over the territory and made to apply to these officers. We have no right to place a forced construction upon the language used. It is an equitable and just rule that where there is doubt in regard to the construction of a statute regarding the compensation of officers, the construction most favorable to the officer should be adopted: *U. S.* v. *Morse,* 3 Story, 87; *Moore's Case,* 4 Ct. Cls., 139. Recognizing this rule, and upon the whole case, it is evident that the action of the court below should stand, except as to the judgment for costs. Let the judgment be modified by striking out the allowance of costs and affirmed in other respects.

POWERS, J., concurred.

ZANE, C. J., took no part in the decision of this case and expresses no opinion.