EL PUEBLO, DEMANDANTE Y APELADO, *v.* RODRÍGUEZ ET AL.,
ACUSADOS Y APELANTES. ·

No. 2148.—*Visto:* Diciembre 14, 1923. *Resuelto:* Junio 17, 1924.

LEY NACIONAL DE PROHIBICIÓN—JURISDICCIÓN.—Al conceder el Congreso juris-
dicción concurrente a las cortes insulares para conocer de las violaciones a
la Ley Federal sobre prohibición, actuó con carácter de legislatura local a
la que ciertas limitaciones constitucionales no son aplicables; por lo que
tal jurisdicción debe ejercitarse con arreglo al procedimiento insular de
enjuiciar.

ID.—ID.—DENUNCIA SUFICIENTE.—Una denuncia por infracción a la Ley Federal
de Prohibición presentada ante la corte municipal, en la cual se establece
la acción a nombre de los Estados Unidos incluyendo además El Pueblo
de Puerto Rico, cumple con los requisitos exigidos por la sección 10 del
Acta Jones.

SENTENCIA de *Pablo Berga,* J. (Humacao), en causa por infracción
a la Ley de Prohibición nacional, condenando a los acusados a
$50 de multa cada uno y las costas. *Confirmada.*

L. *Pereyó Quiñones,* abogado de los apelantes; *José E. Figueras,*
*Fiscal,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del
tribunal.

Este caso se originó en la Corte Municipal de Humacao. El acusado fué denunciado y sentenciado por haber violado la Ley Nacional sobre Prohibición y después de apelar a la corte de distrito, donde también fué condenado, estableció esta segunda apelación ante esta Corte Suprema.

El error de seria trascendencia que se alega por el apelante, es la falta de jurisdicción de las cortes inferiores por haber iniciado la acción criminal a nombre y por autoridad de "El Pueblo de Puerto Rico" en vez de instruirse a nombre y por autoridad de los Estados Unidos por tratarse de la violación de una ley nacional. En otros términos, la proposición del apelante equivale a sostener que no siendo la infracción cometida una ofensa contra la paz y dignidad de "El Pueblo de Puerto Rico," y sí contra la autoridad de los Estados Unidos, los tribunales inferiores carecen de jurisdicción para instituir el proceso a nombre de "El Pueblo de Puerto Rico."

La denuncia en su encabezamiento lee como sigue:

"Corte Municipal de Humacao, P. R. Estados Unidos de América, El Presidente de los Estados Unidos, SS. El Pueblo de Puerto Rico vs. Ramón Rodríguez, José Capele, Santos Rodríguez, Isidoro Cardona, Narciso Rodríguez.—Yo, Rafael Alarcón, Cabo, P. I., vecino de Las Piedras, P. R., calle Principal, de mayor edad, formulo denuncia contra los acusados arriba expresados por delito de infracción a la Ley de Prohibición Nacional, cometido de la manera siguiente: *  *  * "

La Corte de Distrito de los Estados Unidos para Puerto Rico tuvo jurisdicción exclusiva para conocer de las violaciones de la Ley Nacional de Prohibición hasta que el Congreso aprobó en septiembre 21 de 1922 una ley dando jurisdicción concurrente para conocer de dichas violaciones a las cortes insulares. (Leyes de P. R., 1923 p. 97, Fed. Stat. Ann. 1922 p. 273.) Las palabras de esta ley son las siguientes:

"Ley confiriendo a las cortes territoriales de Puerto Rico jurisdicción concurrente con las cortes de los Estados Unidos en aquel

distrito en los casos de infracción de la Ley de Prohibición Nacional y de cualquier ley enmendatoria o supletoria de la misma.

"*Decrétase por el Senado y la Cámara de Representantes de los Estados Unidos de América en Congreso reunidos,* que se confiera como por la presente se confiere, a los jueces y cortes territoriales de Puerto Rico, jurisdicción concurrente con los comisionados y cortes de los Estados Unidos en aquel distrito, sobre toda infracción de la ley de octubre 28 de 1919, conocida por el nombre de Ley de Prohibición Nacional, y de cualquier ley enmendatoria y supletoria de la misma, siendo la jurisdicción de los referidos jueces y cortes territoriales en los casos de dichas infracciones la misma que en la actualidad tienen sobre otros delitos de su jurisdicción."

Para conocer el verdadero alcance de esta ley y la autoridad que tuvo el Congreso para decretarla, parece necesario decir que el Congreso de los Estados Unidos en relación con los territorios ocupa una dual posición, la una como Congreso de los Estados Unidos limitado en sus poderes por la Constitución, y la otra con el carácter de una legislatura local a la que muchas de las limitaciones constitucionales no le son aplicables.  26 R.C.L. 669.

En el último sentido es que el Congreso ha legislado para Puerto Rico al extender la jurisdicción a las cortes insulares para conocer de las violaciones de la Ley Nacional de Prohibición y no ha legislado como Congreso de la nación limitado en sus poderes por la Constitución.  Partiendo de esta base, las cortes insulares al darle fuerza a sus preceptos castigando sus infracciones, no hacen otra cosa sino actuar solamente por delegación del Congreso, quien no sujeto a la cláusula judicial de la Constitución, que no es aplicable a los territorios, ha podido y pudo extender la referida jurisdicción a dichas cortes sin llevar consigo tal jurisdicción los procedimientos existentes en la Corte de Distrito de los Estados Unidos para Puerto Rico, y sí más bien para que se actuara por las cortes insulares en la misma forma de enjuiciar para los demás delitos locales de su exclusiva competencia.

"La distinción entre las jurisdicciones federal y de estado, bajo la Constitución de los Estados Unidos, no tiene ningún fundamento en gobiernos territoriales; y por consiguiente tal distinción no existe, ya en cuanto a la jurisdicción de sus cortes o las materias sometidas a su conocimiento. No hay sino un solo sistema de gobierno o de leyes que funcione dentro de sus límites, pues ninguno está sujeto a las disposiciones constitucionales relativas a la jurisdicción de estado y federal. Y la cláusula judicial de la Constitución no tiene aplicación a las cortes establecidas en los territorios, y con respecto a las cuales el Congreso tiene una facultad enteramente ilimitada por ella. Debe asumirse como inferencia lógica que los demás poderes conferidos al Congreso por la Constitución no tienen aplicación alguna a estos territorios, o que la cláusula judicial es excepcional en ese particular." 26 R.C.L. p. 674 y nota: *Benner* v. *Porter,* 9 How. 235, 13 U. S. (L. ed.) 119; *Downes* v. *Bidwell,* 182 U.S. 244.

Si se dudara del poder que tiene el Congreso para dar la jurisdicción a las cortes insulares prescindiendo del procedimiento que prevalece en las cortes de los Estados Unidos, y esto levantara dudas en cuanto a la constitucionalidad de la ley, sería cuestión de volver a revisar los casos llamados insulares y establecer principios y teorías opuestos a los mismos.

"Si bien el Congreso puede decretar leyes para el gobierno de los territorios sin estar sujeto a todas las restricciones que se imponen a ese cuerpo al aprobar leyes para los Estados Unidos, considerado como un cuerpo político de estados en unión, el ejercicio del poder expresamente conferido para gobernar los territorios no es sin limitaciones. Sin duda que el Congreso al legislar para los territorios quedaría sujeto a aquellas limitaciones fundamentales en favor de los derechos personales que están formulados en la Constitución y sus enmiendas, pero esas limitaciones existirían más bien por inferencia y el espíritu general de la Constitución, de la cual el Congreso deriva todos sus poderes, que no por ninguna aplicación expresa y directa de sus disposiciones." 26 R.C.L. p. 672, y citas: *Dorr* v. *United States,* 195 U. S. 138, 24 S. Ct. 808, 49 U.S. (L. ed.) 128, 1 Ann. Cas. 697; *Church of Jesus Christ, etc.,* v. *United States,* 136 U.S. 1, 10 S. Ct. 792, 34 U. S. (L. ed.) 478;

*Downes* v. *Bidwell,* 182 U.S. 244, 21 S. Ct. 770, 45 U.S. (L. ed.) 1088; *Hawaii* v. *Mankichi,* 190 U.S. 197, 23 S. Ct. 787, 47 U.S. (L. ed.) 1016.

''Aunque un territorio que ha sido cedido deja de ser extranjero en carácter y para todos los fines se convierte en doméstico, o sea, un territorio sobre el cual la soberanía de los Estados Unidos se extiende, es un territorio doméstico dependiente y no una parte integral de los Estados Unidos, de modo que el Congreso en su administración no tiene restricción por muchas de las prescripciones de la Constitución. De conformidad con esto la regla es que en cuanto a un territorio que no ha sido hecho parte integral de los Estados Unidos, la Constitución sin que exista legislación y por su propia fuerza, no lleva las garantías de la Enmienda Sexta que garantiza el juicio por jurado. El derecho a un juicio por jurado y a la presentación de una acusación por un gran jurado no están entre aquellos derechos fundamentales que el Congreso al legislar para un territorio que no ha sido incorporado a los Estados Unidos debe garantizar a sus habitantes. De esto se infiere necesariamente que hasta que el Congreso actúe haciendo extensivo el derecho al juicio por jurado a un territorio que ha sido nuevamente adquirido, el sistema que prevalece de procedimiento judicial es aplicable y regulador. Hasta que el Congreso crea conveniente incorporar a los Estados Unidos un territorio cedido por virtud de tratado, el territorio ha de gobernarse de acuerdo con el poder que tiene el Congreso por virtud del artículo 4, sección 3, de la Constitución para decretar leyes para tales territorios, y con sujeción a aquellas restricciones constitucionales a los poderes de ese cuerpo que son aplicables a la situación.'' 26 R.C.L. p. 675 y notas: *Downes* v. *Bidwell,* 182 U.S. 244, 21 S. Ct. 770, 45 U.S. (L. ed.) 1088; *Fourteen Diamond Rings* v. *U.S.,* 183 U.S. 176, 22 S. Ct. 59, 46 U.S. (L. ed.) 138; *Hawaii* v. *Mankichi,* 190 U.S. 197, 23 S. Ct. 787, 47 U.S. (L. ed.) 1016; *Dorr* v. *United States,* 195 U.S. 138, 24 S. Ct. 808, 49 U.S. (L. ed.) 128, 1 Ann. Cas. 697; *Rassmussen* v. *United States,* 197 U.S. 516, 25 S. Ct. 514, 49 U.S. (L. ed.) 862.

Los casos comprendidos en las precedentes notas se citan en su mayor parte en el de *Balzac* v. *Porto Rico,* 258 U. S. 298, el más reciente de los casos resueltos por la Corte Suprema de los Estados Unidos en relación con el status constitucional de Puerto Rico y al que refiriéndose esta Corte

Suprema en el caso de *Morales* v. *Junta de Inscripciones,* se dice lo siguiente:

"Si la enmienda es aplicable, el caso debe resolverse a favor de los peticionarios. De eso no hay duda. La cuestión queda así reducida a decidir si rige o nó la enmienda constitucional en Puerto Rico y ello levanta uno de los problemas más serios que se vió obligado a afrontar el Tribunal Supremo de los Estados Unidos inmediatamente después de la guerra hispanoamericana y que durante más de veinte años de vez en cuando ha seguido ocupando las mentes de los jueces hasta que fué, al parecer, definitivamente resuelto en el caso de Balzac v. People of Porto Rico, 258 U.S. 298."

En la opinión de esta corte se alude también al importante comentario que de los casos insulares hace Charles Warren en el volumen 3, página 429, de su obra "The Supreme Court in United States History," y luego en relación con el estudio de esta obra y el caso *Balzac, supra,* esta corte sigue diciendo:

"Cuando la obra que acabamos de citar fué editada, aún no había sido resuelto el caso de Balzac, *supra.* En el caso de Tapia como en el de Murati, 245 U.S. 639, la Corte Suprema no emitió opinión dejando así un vacío en aquellos que firmemente creyeron y expusieron su criterio con toda amplitud, (Murati v. Foote, 25 D.P.R. 568), que al otorgarse la ciudadanía americana en forma colectiva a los puertorriqueños, todos los requisitos exigidos por la jurisprudencia de la Corte Suprema se habían cumplido y Puerto Rico debía considerarse como un territorio incorporado al seno de la Unión. Parece que el Tribunal se dió cuenta de ello y cuando William Howard Taft, ex Presidente de los Estados Unidos, ex Secretario de la Guerra y ex Gobernador de Filipinas, entró a formar parte de él como *Chief Justice,* en la primera oportunidad que se le presentó estableció el criterio de la corte de modo inequívoco como sigue: * * * "

Y sin que sea necesario repetir nuevamente todo lo que hasta el presente se ha declarado judicialmente por la Corte Suprema de los Estados Unidos respecto a la actual condición política de Puerto Rico en su aspecto constitucional tal como quedó establecido por el Acta Jones, es importante,

sin embargo, citar del caso de *Balzac, supra,* como perti-
nente en relación directa con la cuestión debatida en este
caso, los párrafos siguientes:

"En Puerto Rico, sin embargo, el portorriqueño no puede insis-
tir en el derecho a juicio por jurado, salvo que sus propios repre-
sentantes en su legislatura se sirvan concedérselo. El ciudadano de
los Estados Unidos que vive en Puerto Rico no puede allí disfrutar
del derecho a juicio por jurado en virtud de la Constitución Fede-
ral, más de lo que puede un portorriqueño. Es la localidad lo que
determina la aplicación de la Constitución en materias tales como
procedimiento judicial, y no el status de sus habitantes.

   ※     ※     ※     ※     ※     ※     ※

"La Corte de Distrito de los Estados Unidos no es una verda-
dera corte de los Estados Unidos establecida bajo el Artículo III
de la Constitución para administrar el poder judicial de los Estados
Unidos que por dicho artículo se establece. Fué creada por virtud
de la soberana autoridad congresional, conferida por el Artículo IV,
sec. 3, de dicho documento, para hacer todas las reglas y reglamen-
tos necesarios para los territorios pertenecientes a los Estados Uni-
dos. La semejanza de su jurisdicción a la de una verdadera corte
de los Estados Unidos en cuanto ofrece oportunidad a los no resi-
dentes para acudir a un tribunal libre de influencias locales, no al-
tera su naturaleza de una mera corte territorial."

Asumida la constitucionalidad de la ley, el mero hecho
de que el Congreso extendiera la jurisdicción a las cortes
insulares consignándose expresamente "siendo la jurisdic-
ción de los referidos jueces y cortes territoriales en los ca-
sos de dichas infracciones la misma que en la actualidad
tienen sobre otros delitos de su jurisdicción," indica clara-
mente la intención del Congreso en el sentido de que si por
nuestra Ley Orgánica (Acta Jones) ya quedaba regulada la
organización y procedimientos de las cortes insulares, dando
este poder a la Legislatura de Puerto Rico, la persecución
y castigo de los delitos de prohibición debía realizarse me-
diante el sistema local de procedimiento establecido por
nuestras leyes locales. Inferir una intención contraria de
modo que los procedimientos que debían seguirse eran los

estatuídos en la Corte de Distrito de los Estados Unidos para Puerto Rico y como corolario que los fiscales de dicha corte promovieran y sostuvieran los procesos ante las cortes insulares, todo ello nos conduciría indudablemente a consecuencias muy absurdas. Una interpretación semejante destruiría el propósito mismo de la ley. Parece que la intención primordial del Congreso fué descongestionar el trabajo de la Corte de los Estados Unidos y hacer más fácil el acceso a los tribunales en los delitos de prohibición. La mayor parte de los casos son resueltos por las cortes municipales que se extienden por toda la Isla y el efecto de aplicar los procedimientos federales sería de que por primera vez y sin precepto local que lo autorice tendríamos juicios por jurados ante las cortes municipales y ante cualquier corte los procedimientos tendrían que llevarse en el idioma inglés para quizá ser consecuentes y darle toda la eficacia constitucional a la ley.

Pero esta no ha sido por ahora la intención del Congreso ni hay nada que justifique su propósito de llevar a las cortes insulares un malestar mayor del que quería remediar al restarle a la Corte de Distrito de los Estados Unidos para Puerto Rico, una parte de su jurisdicción en casos de prohibición y extenderla a las cortes insulares para la aplicación de una ley federal.

Por el solo hecho de que las violaciones de la Ley Nacional de Prohibición son ofensas a la autoridad de los Estados Unidos, no es inconsistente que digamos que la ley del Congreso concediendo jurisdicción concurrente a las cortes insulares, para conocer de tales ofensas, se pueda considerar como ley local en sus medios para hacerla efectiva tal como si hubiera sido decretada por la legislatura de Puerto Rico, la que después de todo no es otra cosa sino una agencia del Congreso de los Estados Unidos. En uno y otro sentido o vista la cuestión bajo este doble aspecto, se puede concluir que la denuncia instituyendo la acción criminal a nombre de los Estados Unidos, incluyendo además

"El Pueblo de Puerto Rico," cumple con lo que determina
la sección 10 de nuestra Ley Orgánica (Acta Jones) que
dice:

"Art. 10.—Todas las diligencias judiciales se harán a nombre de
'Estados Unidos de América, SS el Presidente de los Estados Uni-
dos,' y todas las acciones criminales o penales en los tribunales lo-
cales se instruirán a nombre y por autoridad de 'El Pueblo de
Puerto Rico;' y todos los funcionarios deberán ser ciudadanos de
los Estados Unidos, y, antes de entrar en el desempeño de sus res-
pectivas funciones, prestarán juramento de sostener la Constitución
de los Estados Unidos y las leyes de Puerto Rico.''

La razón de esta disposición de nuestra Ley Orgánica es:
porque aún los delitos locales son ofensas contra la paz y
dignidad de los Estados Unidos, pues estrictamente ha-
blando no existe más soberanía en un territorio de los Es-
tados Unidos que la de los Estados Unidos misma. *Snow
v. United States,* 18 Wall. 317. Esta conclusión no hace
viable la objeción de que considerada la ley del Congreso
una ley local, necesariamente una persona pueda ser con-
victa dos veces por el mismo delito por las cortes insulares
y también por la Corte de Distrito de los Estados Unidos
para Puerto Rico. La jurisdicción de esta última corte dejó
de ser exclusiva en virtud de la ley de 21 de septiembre de
1922, *supra.* Una y otra jurisdicción procede de la misma
fuente de autoridad que es el Congreso y por ser concu-
rrente, si llegara a sobrevenir un conflicto de jurisdicción
entre las diferentes cortes, habría de aplicarse para su so-
lución la regla general de que la corte que primero adquiere
jurisdicción es la que puede retenerla para la decisión del
caso.

"La regla general de que debe prevalecer la autoridad de la
corte que primero adquiere jurisdicción, siendo las mismas las par-
tes, es aplicable al caso de cortes federales y de estado de jurisdic-
ción concurrente, de modo que cualquier corte que adquiere pri-
mero jurisdicción puede retenerla con el fin de resolver cualquier
cuestión en el pleito. De manera que el poder judicial federal no
tiene control sobre cuestiones una vez que las cortes de estado han

adquirido jurisdicción hasta que el estado haya agotado finalmente su poder judicial sobre dichas cuestiones mediante una decisión final en su tribunal más alto." 27 R.C.L. p. 39.

Pero aún después de la decisión final por las cortes insulares, la Corte de Distrito de los Estados Unidos para Puerto Rico no podía empezar o tomar de nuevo jurisdicción en el mismo caso y por igual delito porque su jurisdicción dejó de ser exclusiva en virtud de haberla conferido y extendido el Congreso expresamente a dichas cortes insulares por la ley de septiembre 21 de 1922, *supra*.

En virtud de todo lo expuesto, la sentencia de la corte inferior debe confirmarse.

Los Jueces Asociados Sres. Wolf y Hutchison disintieron.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

A Ramón Rodríguez e Isidoro Cardona se les acusó de haber infringido la Ley Nacional de Prohibición (*sic*). La denuncia fué presentada en la Corte Municipal de Humacao contra ellos y fueron declarados culpables. En apelación un juicio semejante y condena tuvo lugar en la Corte de Distrito de Humacao. El título o principio de la denuncia en este caso lee como sigue:

"'Corte Municipal de Humacao, P. R.—Estados Unidos de América, El Presidente de los Estados Unidos, ss. El Pueblo de Puerto Rico vs. Ramón Rodríguez, José Capele, Santos Rodríguez, Isidoro Cardona, Narciso Rodríguez.—Yo, Rafael Alarcón, Cabo, P. I., vecino de Las Piedras, P. R., calle Principal, de mayor edad, formulo denuncia contra los acusados arriba expresados por delito de infracción a la Ley de Prohibición Nacional, cometido de la manera siguiente: * * . * "

El resto de la denuncia es una descripción del delito en particular cometido. Los acusados presentaron una excepción perentoria general a la denuncia, que fué declarada sin lugar. La alegada falta de jurisdicción de la Corte de Distrito de Humacao no fué levantada en esa corte. Sin embargo, las cuestiones jurisdiccionales pueden ser promovidas

generalmente en apelación y quizá considerarse que están
incluídas en el alcance de la excepción previa general. La
cuestión presentada es si las cortes de Puerto Rico, actuando
por virtud de su autoridad local o como cortes territoriales,
tienen jurisdicción para condenar por un delito bajo la Ley
Nacional de Prohibición. Debe notarse que la denuncia en
este caso representa ser un proceso por virtud de la sobera-
nía de El Pueblo de Puerto Rico y no directamente por vir-
tud de los Estados Unidos de América. El delito imputado
en la denuncia no es penable bajo el Código Penal de Puerto
Rico o algún estatuto aprobado por su legislatura. El de-
lito de fabricar licor, el cual fué imputado a los acusados,
no es distintamente castigable por las leyes penales aproba-
das por la Legislatura de Puerto Rico. En otras palabras,
si no había ninguna jurisdicción territorial no existía ningún
delito imputado contra El Pueblo de Puerto Rico.

La Enmienda Décimoctava a la Constitución de los Es-
tados Unidos prescribe lo siguiente:

"1.—Un año después de là ratificación de este artículo la manu-
factura, venta, o transportación de licores embriagantes, su impor-
tación en, o la exportación de los Estados Unidos y todo territorio
sujeto a su jurisdicción para fines de bebida, queda por la presente
prohibida.

"2.—El Congreso y los diferentes Estados tendrán jurisdicción
concurrente para poner en vigor este artículo mediante legislación
adecuada.

"3.—Este artículo será ineficaz a menos que haya sido ratificado
como una enmienda a la Constitución por las legislaturas de los va-
rios Estados, como prescribe la Constitución, dentro de siete años
a partir de la fecha de su sumisión a los Estados por el Congreso."

La Ley Nacional de Prohibición fué aprobada en 28 de
octubre de 1919, y el día 23 de noviembre de 1921 el Con-
greso de los Estados Unidos aprobó una ley suplementaria
a la Ley Nacional de Prohibición, la cual en su sección 5
prescribe lo siguiente:

"Art. 3.—Que esta Ley y la de Prohibición Nacional serán apli-

cables no sólo a los Estados Unidos, sino a todo aquel territorio que esté bajo su jurisdicción, incluyendo el Territorio de Hawaii y las Islas Vírgenes, a las cortes del Territorio de Hawaii y de las Islas Vírgenes se confiere jurisdicción para obligar al cumplimiento de esta Ley y de la Ley de Prohibición Nacional en dichos territorios e islas.''

En septiembre 21, 1922, el Congreso de los Estados Unidos aprobó la siguiente ley:

''Ley

Confiriendo a las cortes territoriales de Puerto Rico jurisdicción concurrente con las cortes de los Estados Unidos en aquel distrito en los casos de infracción de la Ley de Prohibición Nacional y de cualquier ley enmendatoria o supletoria de la misma.

*Decrétase por el Senado y la Cámara de Representantes de los Estados Unidos de América, en Congreso reunidos,* que se confiera como por la presente se confiere, a los jueces y cortes territoriales de Puerto Rico, jurisdicción concurrente con los comisionados y cortes de los Estados Unidos en aquel territorio, sobre toda infracción de la ley de octubre 28 de 1919, conocida por el nombre de Ley de Prohibición Nacional, y de cualquier ley enmendatoria y supletoria de la misma, siendo la jurisdicción de los referidos jueces y cortes territoriales en los casos de dichas infracciones la misma que en la actualidad tienen sobre otros delitos de su jurisdicción.''

Con arreglo a la sección 3 de la ley de 1921, *supra,* es evidente que la Ley Nacional de Prohibición fué extendida a Puerto Rico como ley federal, y la ley de 1922 no trata por sus términos de convertir en una ley local a la Ley Nacional de Prohibición, como ha sido sostenido, sino meramente conferir a las cortes locales jurisdicción sobre los delitos enumerados en la Ley Nacional de Prohibición. Sin embargo, se ha sostenido fuertemente que la intención del Congreso por la ley de 1922 fué hacer la Ley Nacional de Prohibición una ley local. Como hemos visto, la referida ley no habla de la Ley Nacional de Prohibición sino solamente de los delitos por virtud de la misma. La Ley Nacional de Prohibición confiere a las cortes cierta otra jurisdicción ci-

vil y de equidad que en manera alguna ha sido conferida a las cortes locales de Puerto Rico.

De la facultad del Congreso de hacer distintamente la Ley Nacional una ley local, no tengo, por supuesto, duda alguna. La cuestión es si el Congreso así lo hizo o trató de hacerlo. Si mi memoria no me es infiel, el Congreso una vez hizo el Código Penal del Estado de Kansas, o algún otro estado, un Código Penal para el Territorio Indio, y desde luego que el Congreso tenía esta facultad y lo manifestó en lenguaje inequívoco. En la ley de septiembre 21 de 1922, *supra,* no hay manifestación de la intención de hacer una ley local de la Ley Nacional de Prohibición. Que toda la ley no tuvo por objeto ser una ley local, es un pensamiento eliminado por el hecho de que sólo los delitos mencionados en la Ley Nacional de Prohibición deben caer dentro de la jurisdicción de las cortes locales.

La intención del Congreso según la ley de 1922 parece ser suficientemente clara de una mera lectura de la misma. A los magistrados y cortes de Puerto Rico se les confiere jurisdicción concurrente con los comisionados y cortes de los Estados Unidos para dicho territorio, etc. La jurisdicción concurrente debe significar que es la misma jurisdicción que tiene la Corte de Distrito de los Estados Unidos para Puerto Rico, la cual, hasta la aprobación de la ley de 1922, era la única corte en Puerto Rico con jurisdicción sobre los delitos contra la Ley Nacional de Prohibición. Se ha hecho cierta insistencia en cuanto al fin de la ley donde aparecen las siguientes palabras: ''siendo la jurisdicción de los referidos jueces y cortes territoriales en los casos de dichas infracciones la misma que en la actualidad tienen sobre otros delitos de su jurisdicción.'' Este último párrafo es uno en que meramente se autoriza en términos generales y confiere a las cortes locales jurisdicción sobre las mismas personas y la misma clase de delitos, por ejemplo, más graves (*felony*), ménos graves (*misdemeanor*), como están ahora bajo sus respectivas jurisdicciones. Las palabras ''de su jurisdic-

ción'' significan que el Congreso no está extendiendo la facultad de las cortes locales a ningún grado de casos o personas sobre las cuales no tenían ya ellas jurisdicción.

La historia de la legislación del Congreso y los precedentes históricos en cuanto a ella demuestran que ha sido la práctica uniforme del Congreso conferir a las cortes territoriales jurisdicción para conocer de procesos por violación de los estatutos de los Estados Unidos. Las secciones 1907 a 1910 de los Estatutos Revisados muestran cómo fué que se confirió la jurisdicción.

En el caso *Ex parte Crow Dog,* 109 U. S. 556–560, la Corte Suprema de los Estados Unidos se expresó así:

"La corte de distrito (territorial) tiene dos jurisdicciones. Como corte territorial administra la ley local del gobierno territorial; como ha sido investida por la Ley de Congreso con jurisdicción para administrar las leyes de los Estados Unidos, tiene toda la autoridad de las cortes de circuito."

Decisiones semejantes fueron dictadas en los casos de *Pickett* v. *United States,* 216 U. S., 456–459, 54 L. Ed. 566–568; *Brown* v. *United States,* 146 Fed. 975; *United States* v. *Averill,* 4 Utah 416, 7 Pac. 527, y *United States* v. *Pridgeon,* 153 U. S. 58.

Y, citando del caso *Ex parte Crow Dog,* la Corte Suprema de los Estados Unidos en el de *Gon-Shay-ee,* 130 U. S. 343–348 *et seq.* confirma la idea de la dualidad de jurisdicción de una corte territorial. De la historia de los Estados Unidos en las anteriores decisiones resulta evidente que el Congreso estaba perfectamente familiarizado con la dualidad de jurisdicción en las cortes territoriales. Es verdad que en Puerto Rico las cortes locales territoriales tenían exclusivamente una jurisdicción local hasta la aprobación de la ley de 1922 y que la Corte de Distrito de los Estados Unidos para Puerto Rico podía conocer de todos los delitos contra los Estados Unidos. Aquella ley, sin embargo, daba a las cortes locales jurisdicción por virtud de la Ley

Nacional de Prohibición y les obligaba a tomar conocimiento de los delitos bajo dicha ley de Prohibición Nacional. Todo el poder substancial que tienen las cortes locales es por virtud de la Ley Nacional de Prohibición.

Aunque no discuto el poder del Congreso para hacer una ley local la Ley Nacional de Prohibición, dudo seriamente del poder del Congreso para hacer extensiva la Ley Nacional de Prohibición a Puerto Rico y no extender todas sus disposiciones substantivas y adjetivas. Como ya se ha indicado, no fué la ley de 1922 la que hizo extensiva primeramente la Ley Nacional de Prohibición a Puerto Rico; fué la ley de 1921. Por tanto, estando ya en vigor la ley en Puerto Rico como Ley Nacional de Prohibición, las cortes a las cuales se dió jurisdicción para castigar delitos contra dicha Ley Nacional de Prohibición deben ser, por así decirlo, cortes subsidiarias de los Estados Unidos o Federales en el mismo sentido que las cortes territoriales de los Estados Unidos han tenido desde tiempo inmemorial una jurisdicción federal para la prosecución de delitos contra los Estados Unidos que no eran delitos contra el territorio.

Gran parte del argumento que sostiene la teoría de que la ley de 1922 es una ley local procede de las inconveniencias que resultaron y especialmente de que la práctica y el procedimiento en las cortes de Puerto Rico es muy distinta de la práctica y procedimiento seguido en la Corte de Distrito de los Estados Unidos para Puerto Rico. Esta dificultad me parece queda resuelta inmediatamente manifestando que el procedimiento en las cortes de Puerto Rico cuando están ellas ejercitando jurisdicción federal puede ser compatible y congruente con las prácticas ya en vigor en la Corte de Distrito de los Estados Unidos para Puerto Rico, aún hasta la citación de un jurado con los mismos requisitos que los jurados de esa corte. Si las cortes de Puerto Rico están poniendo en vigor un estatuto federal, tienen ellas las mismas facultades que las cortes de los Estados Unidos, de conformidad con las propias palabras de la ley de 1922.

Todos los medios necesarios fueron conferidos necesariamente para llevar a efecto la jurisdicción. Estoy citando las palabras que el Juez Presidente, Sr. Marshall, dijo en varias ocasiones con respecto a la facultad de los Estados Unidos.

Se alegó que el resultado de pretender conferir a las cortes locales jurisdicción federal no sería debido proceso de ley por los supuestos inconvenientes. Esto no ha sido demostrado. Sin embargo, si la intención del Congreso como indican las palabras de la ley y los precedentes históricos y legales tienen por objeto conferir tal jurisdicción, el peligro de que la ley de 1922 pueda ser ineficaz no es razón para darle una interpretación que en manera alguna está dentro de la intención de la Legislatura. Si las inconveniencias conducen a resultados inconstitucionales vemos dificultades enormes en tratar de interpretar la ley como una ley local.

Posiblemente es cierto que fué la intención del Congreso librar a la Corte de Distrito de los Estados Unidos para Puerto Rico de un trabajo excesivo de acuerdo con la Ley Nacional de Prohibición. No consta de esa ley que la idea era relevar al fiscal de la Corte de Distrito de los Estados Unidos y sus auxiliares de formular acusaciones en la Corte de Distrito de Puerto Rico. De la misma faz de la Ley nada aparece que demuestre que el Congreso en el año 1922 estaba confiriendo una clase de jurisdicción diferente a las cortes territoriales que la que se confería por las secciones 1907–10 de los Estatutos Revisados de los Estados Unidos.

La Ley Nacional de Prohibición es un Estatuto Federal hecho aplicable igualmente en todos los Estados Unidos y a todos los territorios sujetos a su jurisdicción. Debe necesariamente ser aplicado igualmente. Una persona a quien se imputa un delito bajo la Ley Nacional de Prohibición debe tener las mismas oportunidades de defenderse que las que tendría en cualesquiera otra parte de los Estados Unidos. Ella debe tener las mismas oportunidades para un juicio por jurado. Si el procedimiento en las dos cortes es dis-

tinto a como ahora se practica la jurisdicción de las cortes locales debe ser hecha armónica con la jurisdicción de las cortes de los Estados Unidos.   De otro modo tienen que surgir desigualdades.   La Ley Nacional de Prohibición no puede ser una ley local y federal al mismo tiempo dependiendo de qué corte asume jurisdicción.

Por tanto, creo que la sentencia apelada debe ser revocada y absuelto el acusado.