[No. 22530. Department One. September 29, 1930.]

ARTHUR M. FURNIA, *Appellant*, v. GRAYS HARBOR COUNTY, *Respondent*.[1]

[1]Reported in 291 Pac. 1111.

*O. M. Nelson,* for appellant.

*Austin M. Wade, John C. Graham,* and *A. P. Wilson,* for respondent.

BEALS, J.—Arthur M. Furnia, a justice of the peace for Montesano precinct, Grays Harbor county, filed his claim with the county commissioners of his county for certain fees which he claimed were due him from the county in connection with proceedings filed in his court by the sheriff or other county officers. The county commissioners rejected the justice's claim, from which action he appealed to the superior court, before which the proceeding was heard upon an agreed statement of facts. The trial resulted in a judgment in favor of the county, from which judgment the justice appeals to this court.

From the agreed statement of facts upon which the matter was submitted to the superior court for judgment, it appears that appellant is a duly elected, qualified and acting justice of the peace, as hereinabove set forth; that complaints were filed with appellant by county officers authorized to file the same, which complaints were filed with the object of obtaining search warrants, which search warrants were actually issued by appellant, as provided by law; that appellant has filed with the county commissioners cost bills, in which he taxed in his own favor as costs certain fees which he claimed due him upon the filing of the complaints and the issuance of the search warrants; and that appellant's claim was rejected by the board of county commissioners.

The question here to be determined is whether or not a justice of the peace, under existing laws, may

demand and receive from his county fees upon the filing with him, by duly authorized officers, of complaints filed with the object of obtaining search warrants, and upon which complaints search warrants are actually issued by the justice.

Section 1864, Rem. Comp. Stat., provides for the fees which a non-salaried justice of the peace, such as appellant, may lawfully demand. The relevant portions of this section read as follows:

"The fees and compensation of justices of the peace shall be as follows, to wit:

"When each case is filed the sum of $2 shall be paid by the plaintiff, which said sum shall include the docketing of the cause, the issuing of notice and summons, the trial of the case and the entering of judgment:

. . .

"For issuing warrants in criminal cases, $.50."

■ In determining the question here presented, certain rules of statutory construction must be considered. It is, of course, true that public officers may demand and collect fees only as expressly authorized by statute. This rule is well expressed in 46 C. J. 1017, as follows:

"Fees are only collectible when expressly authorized by law, and an officer demanding fees either from the public, or the state or other governmental bodies, must point to a particular statute authorizing them. No usage in regard to making such charges can legalize them without such authority."

and again, page 1019:

"Statutes relating to the fees and compensation of public officers must be strictly construed in favor of the government, and such officers are entitled only to what is clearly given by law."

In support of this text, many authorities are cited, which unquestionably lay down the principles epitomized by the editors of Corpus Juris in the foregoing quotations. At the same time, when a public officer

receives his sole compensation by way of fees for services performed, and the law makes provision for the payment of such fees, it is not reasonable to construe the statute narrowly or strictly, with the result that the officer be required to render services without compensation unless such construction be clearly required.

The statute above quoted applies only to justices of the peace who receive no regular salary. Consideration of the whole section satisfies us that the legislature intended to provide at least some small compensation for almost every act which a justice of the peace may be called upon, under the law, to perform. This being true, it does not well accord with the dignity of the state to demand that its officer, who receives no regular salary for the services which he is, from time to time, required to perform, render to the state, without compensation, services which the officers of the state desire and evidently deem of value to the state in the administration of its laws. In such a case, once it appears that fees are provided by law, which the justice is authorized to receive generally for services rendered, including services rendered to the state in criminal proceedings, the courts will not place too strict a construction upon the law, but will consider the fact that a non-salaried state officer, who is compensated only by fees for what services he may perform, should not be called on to render to the state services, which officers of the state deem necessary, without receiving some compensation therefor.

It is as much the proper policy of the state that its officers receive for services rendered the full compensation provided by law as it is that such officers shall receive no greater compensation than is so provided for. The situation is somewhat analogous to that rule of statutory construction applicable to laws providing for liens in certain cases. In determining

whether or not the statute grants a lien, the statute is strictly construed; once it be determined that the right of lien is granted, the law is liberally construed to further its manifest purpose.

This conclusion finds support in the opinion of Story, Circuit Justice, in the case of *United States v. Morse,* Fed. Cas. No. 15,820, in which the compensation of the holder of the two offices of deputy collector of customs and customs inspector was involved. It being determined that the two offices were not incompatible, the opinion states:

"I know of no authority given by law to the secretary of the treasury to compel, or to require, any officer appointed to one office to perform the duties of another independent office, either as a condition of his appointment, or otherwise. The law, as I conceive, adjusts, or intends to adjust, the measure of the compensation of every officer to the duties to be performed in that office, and not in another independent office. It does not seem to me, therefore, that the court, except upon the most clear and positive language of a statute, ought to adopt any such conclusion; and where the words are loose or obscure, and admit of two interpretations, it seems to me, that the construction ought to be favorable to the claims of the officer, who performs the duties of two independent offices. It has always appeared to me, looking historically to the legislation upon the subject of compensation of officers of the customs, that the great object of the legislature was, not to cut down the reasonable emoluments of officers holding different offices, but to prohibit their union, when incompatible with public policy, or to prevent and suppress the growing evil of extra compensation claimed for services purely incidental to a single office."

In the case of *United States v. Collier,* Fed. Cas. No. 14,833, it was said, in the course of the opinion:

"This doctrine is in furtherance of the general principle, that the statute itself must furnish, primar-

ily, and essentially, the indications of the will of the legislature; and, should the provisions in respect to the compensation of the collector be found to be obscure, the interpretation most favorable to him should be adopted."

In the later case of *McKinstry v. United States,* 40 Fed. 813, construing a statute which did not by its terms expressly allow to a court commissioner a fee for filing a complaint, the circuit court, speaking through Judge Pardee, Justice Lamar concurring, held that compensation should be paid on the same basis as for depositions, for which a fee was expressly allowed. In the course of its opinion, the court said:

"If the provision in relation to taking depositions is taken and construed strictly and technically, presuming everything for the government and nothing for the petitioner, the finding of the court on the claim for complaints was right. On the other hand, if the provision is taken and construed liberally, and on the theory that the government does not require the services of commissioners of the circuit court without compensation, then the petitioner would seem to be entitled to compensation for taking complaints, . . . ".

In the case of *Lavin v. Board of Commissioners,* 151 Ill. App. 236 (affirmed in 92 N. E. 291), the court said:

"In our opinion all statutes relating to public offices must be read in *pari materia* with the other statutes providing for compensation and fees for the incumbents of such public offices, and that in so considering the various statutes relating to public offices and the compensation of the incumbents, the courts will by no means close their eyes to the effect of provisions intended to give public officers reasonable compensation for their services."

The same rule was followed by the supreme court of the territory of Utah in the case of *United States v. Averill,* 4 Utah 416, 7 Pac. 527, in which the court said:

"We have no right to place a forced construction upon the language used. It is an equitable and just rule that where there is doubt in regard to the construction of a statute regarding the compensation of officers, the construction most favorable to the officer should be adopted."

In the case at bar, we do not think it necessary to go so far as did the courts of the respective jurisdictions in the cases cited, as we think that the statutes of this state, reasonably construed, clearly give to a justice of the peace the right to compensation for such services as it appears in the instant case were rendered by appellant.

The present law providing for the collection of fees by justices of the peace contemplates the payment of an initial docket fee of two dollars upon the filing of a complaint. This includes under the statute certain specified services, which the justice must render without receiving further compensation. The state is, of course, relieved from the necessity of paying any fee in advance (Rem. Comp. Stat., § 505), but a reading of the entire section 1864, Rem. Comp. Stat., *supra,* satisfies us that it was intended to apply to criminal as well as to civil cases.

It may be contended that, because § 1864, *supra,* provides that, "when each case is filed," the docket fee shall be paid, and because § 505, above referred to, states that the rule that all fees are invariably due in advance, where demanded, shall not apply when the officer performs any official act for his county or the state, the two acts are incompatible, and that § 1864, *supra,* does not therefore apply to services rendered for the state or county by a justice of the peace. A number of the separate fees payable to justices under § 1864, *supra,* obviously relate to criminal proceedings. The fact that such items are included in the section

with the other fees scheduled, together with the fact that, if this section does not apply to criminal proceedings, there is no section which does so apply, in our opinion, require a holding that § 1864 applies to both criminal and civil cases.

A construction of the statute which would require non-salaried justices of the peace, who are compensated solely by fees paid for specific services rendered, and who are required, on demand of the proper officers, to render services for and on behalf of their respective counties and the state, to render such services gratuitously, should not be indulged in unless it clearly appears that the law admits of no other construction. We are satisfied that the legislature intended that non-salaried justices should receive, for services rendered by them in criminal proceedings, the same schedule of fees that they are to receive in civil cases.

The next question to be considered is whether or not this fee applies to complaints filed for the purpose of procuring the issuance of search warrants under Rem. Comp. Stat., §§ 7316, 7317, providing for searches for and seizure of contraband intoxicating liquor, or, under other laws, providing for searches for game unlawfully killed or possessed. Proceedings authorized by the two sections above referred to are purely *in rem* against contraband goods. *State v. Twenty Barrels of Whiskey,* 104 Wash. 382, 176 Pac. 673. Of course, a complaint filed under these sections, and a search warrant issued pursuant thereto, may or may not result in the filing, at some later date, of a criminal complaint against an individual; but whether or not the filing of a criminal complaint does follow, it seems clear that the filing of a complaint for the purpose of securing a search warrant is, under § 1864, *supra,* the filing of a case, and, that upon such a filing

by a duly authorized officer of the county, there be-comes due to the justice the regular docket fee to be by him taxed as costs, as are fees in ordinary criminal cases. We hold, therefore, that in connection with the complaints which were filed with appellant, as set forth in his claim against his county, appellant was entitled to receive from the county in due course a fee of two dollars for each complaint so filed.

In regard to the fee of fifty cents, claimed by appellant for the issuance of each search warrant, a more difficult question is presented. The statute provides for the payment of a fee of fifty cents for the issuance of each warrant "in criminal cases." This court, in the case of *State v. Great Northern R. Co.*, 98 Wash. 197, 167 Pac. 103, held that a proceeding for the issuance of a search warrant under §§ 7316, 7317, *supra,* is in form similar to a criminal action, in that it is prosecuted by the state, although as to the procedure to be followed therein it is governed by the rules applicable to ordinary civil practice. The procedure tends normally, according to its manifest purpose, toward the seizure and destruction of contraband articles. While the courts are not in accord as to the nature of such proceedings, we are of the opinion that, considering all the principles applicable to the question under consideration, it should be held that the justice of the peace is entitled to receive a fee of fifty cents for the issuance of each search warrant sought under the sections above referred to or kindred statutes.

Respondent cites the case of *Olympia v. Culp,* 136 Wash. 374, 240 Pac. 360. It was there held that a defendant could not predicate error upon the failure of the justice of the peace to enter in his docket the filing of a complaint under which the state sought a search warrant, which was later issued, and pursuant to which the premises occupied by the defendant were searched,

with the result that a criminal charge was filed against the defendant. The complaint against the defendant was regularly filed and docketed, and this was held to be a sufficient compliance with the statute. The complaint under which the search warrant was issued was regularly filed with the justice, and it was properly held that the mere failure to enter the filing of the complaint upon the justice's docket could not later be urged by an accused in the position of the defendant. Whatever effect the failure to docket a complaint, in which a search warrant was sought, would have upon objection being seasonably urged in an attack upon the search warrant, such an omission was properly held to be immaterial in a situation such as was presented in the case cited.

Whether or not, in case a complaint is filed against an individual based upon a situation disclosed by the execution of a search warrant issued pursuant to a complaint for the filing of which the justice has received a docket fee, a second docket fee must be paid, or whether the complaint should be filed in the original proceeding without further fee, need not at this time be decided.

The judgment appealed from is reversed, with instructions to the trial court to proceed in accordance with this opinion.

MITCHELL, C. J., FULLERTON, MILLARD, and TOLMAN, JJ., concur.